JOSHUA T. STEVENSON & others *vs.* SAMUEL AUSTIN Jr.
& others.

JOHN W. PERIT & others *vs.* SAMUEL AUSTIN Jr. & others,

Where the creditors of an insolvent debtor, who has assigned his property for the pay-
ment of his debts, are numerous, and some of them not within the Commonwealth, i
is not necessary that they should be made parties to a bill in equity which concerns
his assets : He and his assignees only need be made parties.

A., by a letter of credit, authorized B. to draw on him at six months sight ; B. to fur-
nish A. with funds to cover the draft at or before maturity, and to make the bill of
lading of the goods, which he should purchase with the draft, *to the order of A.* and
send it to A.'s agent, and send a copy thereof to A. with the draft. B. purchased
goods of C. and gave him, in payment therefor, a draft on A. and also caused the bill
of lading, and a copy thereof, *to be sent conformably to* the terms of the letter of
credit : The goods arrived at their place of destination, and A.'s agent ordered them
to be delivered to himself, and received and sold them : C. indorsed and negotiated
the draft, but A. refused to accept it, or to pay it at maturity, and C., as indorser,
paid the amount thereof to the holder, with damages : B. did not furnish A. with
funds to cover the draft. *Held,* on a bill in equity, that C. was entitled to the pro-
ceeds of the sale of the goods.

BILLS in equity. In the first, J. T. Stevenson, C. P. Cur
tis and James S. Bruce were plaintiffs, and S. Austin Jr. and
George Wildes & Co. defendants. In the second, the plaintiffs
were the members of the firm of Russell & Sturgis, and the de-
fendants were S. Austin Jr., George Wildes & Co., James
Phillips Jr., James S. Bruce, J. T. Stevenson, and C. P.
Curtis.

The *first bill* alleged, that on the 2d of May 1836, Samuel
Austin Jr. of Boston, as attorney of George Wildes & Co. of
London, granted to James S. Bruce, of Boston, a letter of
credit, authorizing James Phillips Jr., supercargo of the ship
Humboldt, then bound to ports beyond the Cape of Good
Hope, to draw on said Wildes & Co. at six months' sight, for
any sum or sums not exceeding £3000 sterling, for account of
said Bruce : (See this instrument at large, *post.* p. 477.) That
Bruce, by his writing on said letter of credit, promised to place
Wildes & Co. in funds, on or before maturity, to cover such
draft or drafts as might be drawn under said credit, &c., or set-
tle, in Boston, the amount of such draft or drafts, upon receiving

notice to that effect from Wildes & Co. : That the merchandize, which was to be purchased with such draft or drafts, was to be sent, with a bill of lading, to Austin, to be received and held by him in trust to secure the performance by Bruce of his said promise, &c. : That afterwards, on the 12th of December 1836, said Phillips, at Manilla, in the East Indies, drew a draft, under and by virtue of said letter of credit, on said Wildes & Co. for £753 19 7, at six months' sight; having previously purchased 806 bags of sugar, for which said draft was drawn and given in payment : That said sugars were shipped on board the Humboldt, and bills of lading signed by the master, whereby the sugars were made deliverable to the order of Wildes & Co. at Boston, or to their assigns ; and that one part of said bills of lading accompanied said draft, and that the other was sent to Austin, who, upon the arrival of the Humboldt with the sugars at Boston, by his indorsement, as attorney of Wildes & Co., ordered the contents of said bill of lading to be delivered to himself, and thereupon received the sugars upon the trust abovementioned.

The bill further alleged, that on the 29th of June 1837, the said draft was duly presented to Wildes & Co. for acceptance, which was refused : That on the 28th of November 1836, said Bruce, being insolvent, assigned all his property to said Stevenson & Curtis, according to *St.* 1836, *c.* 238, whereby they became entitled to said sugars, the legal title to which was vested, by said bill of lading, &c., in Bruce, subject only to the aforesaid trust in favor of Wildes & Co. : That by the refusal of Wildes & Co. to accept said draft, Bruce was released from his obligation to remit funds to them to provide for it, or to settle for it in Boston ; and that after such refusal, there was no trust in favor of Wildes & Co. to have the sugars, held by Austin as aforesaid, applied for their benefit ; but that Austin thenceforth held the same, and ought in equity to have applied them, according to the order and for the benefit of the plaintiffs : Yet that Austin had sold the sugars, and had refused to account therefor with said Stevenson & Curtis, assignees of said Bruce.

The bill concluded with a prayer that Austin might be ordered to account with said assignees, &c.

The *second bill* set forth the main facts which were alleged in the first, and stated that said Phillips arrived at Manilla, in the ship Humboldt, in November 1836, and exhibited said letter of credit to the plaintiffs, and that they, on the faith thereof, (and believing that any bill, drawn in pursuance thereof, on Wildes & Co. by Phillips, would be duly honored, and that any merchandize purchased therewith would be specifically pledged, in the hands of Austin, for payment thereof,) sold and delivered to Phillips 806 bags of sugar, and received from him, in payment, a bill of exchange, dated at Manilla, December 12th 1836, whereby Phillips requested Wildes & Co. to pay to the order of the plaintiffs, under their style of Russell & Sturgis, six months after sight, the sum of £753 19 7, sterling, for value received, &c. : That the plaintiffs indorsed and negotiated said bill, in the usual course of business, and that it finally came into the possession of Messrs. Darthy, Brothers, of London, who duly presented it for acceptance and payment, which were refused ; whereupon the bill was protested, and notice given to the plaintiffs, as indorsers : That Bruce had seasonable notice that the bill was not accepted, and would not be paid ; yet that he did not provide funds for payment thereof at maturity : That the plaintiffs became liable to pay, and on the 1st of February 1839, paid the contents of said bill to the holders, with damage and interest, to the amount of $3960·10, and on such payment became the lawful holders of the bill : That Wildes & Co. when the bill was presented to them for acceptance and payment, were unable to pay their just debts, and have since refused, and still refuse, to pay said bill and the charges thereon, or to admit their liability to pay the same.

The bill then alleged that, by reason of the foregoing facts, a trust had arisen in the plaintiffs' favor, to have the proceeds of said sugars, in the hands of Austin, applied to the payment of said bill of exchange, and of the charges thereon. The prayer of the bill was for an answer from all the defendants, and that Austin might be decreed to render to the plaintiffs an account of

the sales of the sugars, and to pay to them the proceeds of said sale.

The *answers* of the defendants, in both cases, admitted the main facts alleged in the bills. Austin's answer admitted that he had received and sold the sugars, and that the net proceeds were in his hands. Stevenson & Curtis, in their answer stated, that sundry creditors of Bruce had executed his assignment, viz. eighteen individuals and firms, and seven corporations, and one firm doing business in Amsterdam and Rotterdam; and they prayed the judgment of the court whether those creditors should not be made parties, as defendants to the second bill.

The cases were submitted to the court on the bills and an swers, and on the following *facts agreed :*

On the 2d of May 1836, the defendant Austin, as attorney of the defendants George Wildes & Co., bankers in London, granted to James S. Bruce a letter of credit, of which the following is a copy : "Letter of credit for a sum not exceeding £ 3000, sterling. Boston, May 2, 1836. Mr. James Phillips Jr., supercargo ship Humboldt, bound to ports beyond the Cape of Good Hope, hereby authorized to draw on Messrs. George Wildes & Co. of London, at six months' sight, for any sum or sums not exceeding, in the aggregate, three thousand pounds sterling, and his drafts shall be duly honored on presentation at the banking house of the drawees in London. This credit being for account of Mr. James S. Bruce, of Boston, and to continue in force nine months from the date hereof. The bill of lading to be made to the order of George Wildes & Co. of London, and sent to S. Austin Jr., their attorney in Boston. One copy to accompany the drafts in London. S. Austin Jr., Attorney to G. W. & Co., London."

Bruce at the same time entered into the written contract with George Wildes & Co., a copy of which is indorsed on said letter of credit in words as follows : "Boston, May 2, 1836. Received of S. Austin Jr., attorney to George Wildes & Co. of London, a letter of credit issued in conformity to my request, a true copy of which letter of credit is on the first page of this paper. I hereby agree to place Messrs. George Wildes & Co.

in funds, on or before maturity, to cover such draft or drafts as may be drawn under said credit, together with a banker's commission of one per cent., and any charge of interest that may be incurred ; or I will settle the amount of said draft or drafts here, upon receiving notice to that effect from them, or their attorney, provided I have not previously remitted the house in London for the same. I will hand you a policy of insurance, in the course of a week, to cover this credit, made payable to George Wildes & Co. JAMES S. BRUCE."

James Phillips Jr., in whose favor the said credit was granted, went as supercargo to Manilla ; and on the 20th of November 1836, bought for account of Bruce 806 bags of sugar of Russell & Sturgis, and gave them there a bill of exchange drawn on George Wildes & Co. payable to Russell & Sturgis for £753 19 7. Russell & Sturgis saw the letter of credit, under which Phillips drew this bill, before they took the bill ; and the court may draw any legitimate inference from this fact.

On the 28th of November 1836, Bruce became insolvent, and assigned all his property, for the benefit of all his creditors, to C. P. Curtis and J. T. Stevenson.

The sugars were delivered to Phillips, the supercargo and agent of Bruce, and were sent to Boston, under a bill of lading making them deliverable to George Wildes & Co. at Boston, the invoice showing that they were shipped for account of Bruce ; and on their arrival at Boston, 24th April 1837, Austin, as attorney to Wildes & Co., ordered them to be delivered to himself. He then called upon the said Curtis & Stevenson, and requested them to pay the said bill of exchange and take the sugars ; but they declining to pay the bill, he retained the sugars and sold them, paid the freight and charges, and now holds the net proceeds. He gave notice to Curtis & Stevenson that he was about to sell, before he sold, and they claimed the proceeds of the sugars, as Bruce's assignees.

Russell & Sturgis indorsed and negotiated the bill of exchange, and it came into the hands of certain persons in London, who presented the bill for acceptance to Wildes & Co., who refused to accept the bill, and it was duly protested for

non-acceptance, and afterwards, when it came to maturity, it was duly protested for non-payment.

On the 29th of June 1837, Wildes & Co. wrote a letter to Bruce as follows : " London, 29 June 1837. Mr. James Bruce, Boston. Sir, Mr. James Phillips Jr. has passed the draft on us for your account, dated Manilla, 12 Dec. at 6 months' sight £ 753. 19. 7, which in our present situation we cannot honor. It is in the hands of Mess. Darthey, Brothers, of this city, and will be due on the 24 – 27 Dec. next.

We would recommend your providing for same through us or some other house in this city, as otherwise the bill would be sent to Boston to be recovered from you with damages. We give you this information for your government, and remain duly, Sir, your obedient servants, Geo. Wildes & Co." This letter was received by Bruce, on or about the 8th of August 1837, and was immediately communicated to his assignees. Bruce did not either pay the bill in Boston to Austin, nor remit funds to Wildes & Co. for that purpose ; and Russell & Sturgis, having received due notice of the dishonor of the bill, were obliged to pay, at Manilla, to the holder, the amount with damages, which much exceeded the net proceeds of the sugars.

Stevenson and Curtis claimed the proceeds of the sugars, by bill in equity filed August 21st 1838 ; and Russell & Sturgis by bill in equity filed September 23d 1840.

It was submitted to the court to determine the question of parties defendants to the second bill, and, if the proper parties were before the court, who has the better equitable title to the proceeds of the said sugars ; and whether any and what interest shall be paid ; the said Austin having made use of said funds from the time when he received the same, but having made such pecuniary arrangements as to be able to pay over the same whenever thereto required by a judgment of court

These cases were argued at the last March term.

*B. R. Curtis*, for Stevenson & others.

*.C. G. Loring & Dehon*, for Perit & others.

*Dexter*, for Austin & G. Wildes & Co. in both suits

WILDE, J. These cases were argued on the bills and an-

swers, and on an agreed statement of facts. Both cases depend on the same questions, as the plaintiffs in each suit claim the same funds in the hands of Austin, one of the defendants in both suits, being the proceeds of the sale of sundry bags of sugar, purchased of Russell & Sturgis, on account of Bruce, another defendant, and which were delivered to Austin, the attorney of George Wildes & Co. of London, in pursuance of the agreement of the parties to that effect : So that if the claim of one party should be allowed, the claim of the other must necessarily be disallowed. The main question therefore is, which of these parties have, the better equitable title to the funds in question. But before considering this question it is necessary to dispose of a preliminary objection, made by the answer in the suit in which the firm of Russell & Sturgis are plaintiffs.

It appears that Bruce, having become insolvent, has assigned his property and effects, including his equitable claim to the funds in the hands of Austin, to Stevenson & Curtis, in trust for the use and benefit of his creditors. The assignees are made parties defendants in this suit ; but it is objected, that the creditors, who have become parties to the assignment, ought also to be made defendants in this suit. The general rule is, that all parties interested in the subject of the suit should be made parties, plaintiffs or defendants, so that the court may settle the rights of all parties interested, and may thereby prevent future litigation. But there are many exceptions and qualifications to the general rule. When the parties interested are very numerous, so that it would be difficult and expensive to bring them all before the court, and all the different interests may be fairly tried, the court will not require a strict adherance to the rule. It is said that the creditors in this case are numerous, some residing out of the Commonwealth, and the residence of others being unknown. We think, therefore, that it is sufficient to make the assignees parties, who alone have a right to claim the property, (they having the legal title,) and who are empowered, and whose duty it is, to represent the interests of and to act for all the creditors interested in the trust.

In *Adair* v. *The New River Co.* 11 Ves. 445, it is said by Lord Eldon, that it is not necessary to make all the individuals, who are interested, parties : " The court therefore has required so many, that it can be justly said, they will fairly and honestly try the right between themselves, all other persons interested, and the plaintiff." So in *Lloyd* v. *Loaring*, 6 Ves. 779, Lord Eldon says, " I have seen strong passages, as falling from Lord Hardwicke, that where a great many individuals are jointly interested, the court will let a few represent the whole." So in *Vernon* v. *Blackerby*, 2 Atk. 145, Lord Hardwicke refers with approbation to a case decided in 1720, where several persons were interested, who had given a general power and authority to some few only, and therefore to avoid inconvenience from making numerous parties, the court restrained them to those particular persons who were intrusted with the general power. It is laid down in Mitf. Pl. (3d ed.) 142, that " trustees of real estate for the payment of debts or legacies may sustain a suit, either as plaintiffs or defendants, without bringing before the court the creditors or legatees for whom they are trustees ; and the rights of the creditors or legatees will be bound by the decision of the court against the trustees." And this rule seems supported by the current of the authorities. In *Meux* v. *Maltby*, 2 Swanst. 277, several of these and some other authorities are referred to, and the question as to parties in similar cases was very fully considered. In that case, on a bill against the treasurer and directors of a joint stock company, it was held that it was not necessary that the rest of the proprietors, being very numerous, should be made parties. Sir Thomas Plumer, master of the rolls, after referring to several authorities, says : " Here is a current of authority, adopting, more or less, a general principle of exception, by which the rule, that all persons interested must be parties, yields when justice requires it, in the instance either of plaintiffs or defendants. The rigid enforcement of the rule would lead to perpetual abatements. This, therefore, cannot be regarded as a new point, or as creating a difficulty It is

quite clear that the present suit has sufficient parties, and that the defendants may be considered as representing the company."

Nor is there any thing inconsistent with this principle of exception in the decision of the case of *Newton* v. *The Earl of Egmont*, 4 Simons, 585, & 5 Simons, 130, cited by the defendants' counsel. In that case, the plaintiff claimed priority of his incumbrance to the claims of sundry creditors for whose use and benefit the estates incumbered had been conveyed in trust ; and it was held that all the creditors must be made parties. The Vice Chancellor says, " I accede to the rule laid down in *Adair* v. *The New River Co*. That rule, however, applies only to cases where there is one general right in all the parties ; that is, where the character of all the parties, so far as the right is concerned, is homogeneous. In this case, where the question is priority of charge, the very nature of the question makes it necessary that all the creditors should be parties. It implies a contest with every other person claiming an interest in the land." 5 Simons, 137.

From these authorities it seems very clear that there is no defect of parties in the present case, and that it is unnecessary that the creditors of Bruce should be made parties in either suit, which must be attended with great delay, expense and difficulty, without subserving, in any respect, the administration of justice between the parties interested. The interests of these creditors are similar, which the trustees are bound to enforce and defend.

We are then brought to the consideration of the main question, as to the equitable claims of the contending parties. The solution of this question depends on the validity or invalidity of the title set up by the firm of Russell and Sturgis.

By the letter of credit by Wildes & Co. in favor of Phillips, the agent of Bruce, it was stipulated, that the bill of lading of the sugars intended to be purchased with such draft or drafts as might be drawn under said credit, should be made to the order of said Wildes & Co. and sent to the said Austin, their attorney, in Boston. It is agreed that the sugars thus sent were held as collateral security for the performance of Bruce's prom-

ise to place Wildes & Co. in funds to cover said drafts, on or before their maturity. But the counsel of the defendants, Stevenson & Curtis, the assignees of Bruce, contend that no lien was created in favor of any person, who might become interested in the proposed undertaking, except Wildes & Co., and that their lien was *ipso facto* discharged by their refusal to accept the bill drawn under the letter of credit ; that their acceptance was a condition precedent, being the whole consideration of Bruce's promise ; and that he was not bound to remit funds to Wildes & Co. before he had notice of their acceptance of the bill, and certainly not after notice of its non-acceptance.

On the other hand, the counsel of Russell & Sturgis contend that the lien is not to be thus limited ; that the pledge was intended as security for the payment as well as the acceptance of the bill ; that if Wildes & Co. had paid the bill at maturity, his lien would have been preserved ; and that as Russell & Sturgis have paid the bill, they are entitled to the benefit of the lien, by way of substitution ; that Russell & Sturgis took the bill on their faith in the letter of credit, and in the promise of Bruce to pay the bill at maturity. It was also argued that the acceptance of the sugars by Wildes & Co. implied a renewal of their promise to accept the bill, and amounted in law to an actual acceptance.

We have taken time to consider the case, with the arguments of counsel thus imperfectly recapitulated, and I will now proceed to state the opinion of the court, and the principal reasons and principles on which it is founded.

That here was a lien created as security for the benefit of Wildes & Co. is not denied ; but to what extent, and under what circumstances, it was to avail them, the parties have not declared. Their intentions, therefore, must be inferred from the nature of the transaction, and all the circumstances of the case. When such a lien is created as a security or in trust, the parties must be presumed to have in their contemplation all the contingencies which might probably occur in the course of the business to which the security relates, and to intend that the lien should avail the party for whose benefit it was created, as a valid security, in any such contingency. Considering this as a

reasonable inference, we cannot think that the lien in this case was intended to be limited to the acceptance of the bill, and that by its non-acceptance the lien was *ipso facto* discharged, as the defendants' counsel contend. If Wildes & Co. had paid the bill at its maturity, with their own funds, we can have no doubt that they would have been entitled to the benefit of their lien, notwithstanding their refusal to accept the bill ; and if so, their acceptance cannot be considered as a condition precedent Their refusal to accept the bill was of little importance to Bruce ; for he was bound to advance funds for the payment of the bill, and this he ought to have done, in justice to all parties interested, notwithstanding the non-acceptance. Of this he had seasonable notice, and was requested to remit funds, either to the house of Wildes & Co. or to any other house, wherewith to pay the bill. The refusal of Wildes & Co. therefore, did ir no respect operate to the prejudice of Bruce ; for it was immaterial to him whether he made payment to Wildes & Co. or to the bill holder. From these considerations, and all the circumstances of the case, in our opinion, there can be no doubt that Wildes & Co. had a lien on the goods, in the hands of their agent, in nature of a trust, to secure and indemnify them in case they should pay the bill. The parties must have contemplated such a contingency ; for if no payment should be made by Wildes & Co. they could have no claim for indemnity. They did not, however, pay the bill ; but it was paid by the plaintiffs in the second bill (Perit & others), and they thereupon became, by way of substitution, entitled to all the benefits which Wildes & Co. would have been entitled to, if they had paid the bill.

The principle of substitution has been long recognized by courts of equity, and is well established. In *Gibson* v. *Crehore*, 5 Pick. 146, which was a bill to redeem a mortgage, it was held that if the plaintiff paid the mortgage debt, and if those, who were interested with her, should refuse to contribute their proportions of the debt, she would have a right to hold the whole estate redeemed, in right of the mortgagee, until she should be indemnified. The payment of the mortgage debt was held to be an equitable assignment of the mortgage, and

entitled the plaintiff to all rights in equity of the mortgagor. And the same doctrine has been repeatedly laid down in other cases. So it is a well settled rule, that in equity a surety, who pays the debt of the principal, is entitled to the benefit of all the securities which the creditor had against the principal. *Copis* v. *Middleton*, Turner & Russell, 229. 1 Story on Eq. 481. 592. *Homer* v. *Savings Bank*, 7 Connect. 478. *New London Bank* v. *Lee*, 11 Connect. 112.

So it was decided in the case *Ex parte Prescott*, 1 Mont. & Ayrt. 316, that if a party takes bills for the price of goods, and it is agreed that the bills are to be paid out of the proceeds of the goods, and the acceptor becomes bankrupt, the indorsers of the bills, even without notice of the agreement, are entitled to the benefit of it. The same principle is laid down in the case *Ex parte Hobhouse*, 3 Mont. & Ayrt. 269.

Courts of equity specifically apply the proceeds of property bound to indemnify a particular party, by attaching the trust to those who are equitably entitled to the benefit of it.

These authorities and principles sustain very fully, as it seems to us, the claim of the plaintiffs in the second action. They are in the relation of sureties to Bruce, and have been compelled to pay his debt. They have therefore a strong equitable claim to the property pledged for the security of such payment. Indeed, without resorting to the doctrine of substitution, this action might be maintained, if the property was deposited in the hands of Austin for the security generally of any one who might pay the bill. And that it was so deposited, we think may be reasonably inferred from the circumstances of the transaction. If Phillips, who it is said drew the bill, not as the agent of Bruce, but so as to make himself liable as drawer, had been compelled to pay the bill, we cannot doubt he would have a right to avail himself of the property pledged; and the plaintiffs, *Perit & others*, who indorsed the bill, we think are entitled to the same benefit.

The letter of credit was exhibited to them, and the presumption is, that they took the bill relying, in some measure, on the security given, and the promise of Bruce to remit funds to

Wildes & Co. to pay the bill. But without relying on this view of the case, we are well satisfied that, admitting the security to have been to Wildes & Co. only, the plaintiffs are nevertheless entitled to maintain their claim upon the established principles of equity : the trust having been intended to secure and indemnify Wildes & Co. in case they should be compelled o pay the bill : And as *Perit & others* have paid the bill, they are entitled to the benefit of the security by the way of substitution.